## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

AMERICAN SPIRIT AND CHEER
ESSENTIALS, INC.,  ROCKSTAR
CHAMPIONSHIPS, LLC, JEFF &
CRAIG CHEER, LLC, d/b/a JEFF AND
CRAIG CAMPS, and ASHLEY
HAYGOOD, Individually and on Behalf of
all Others Similarly Situated,

                Plaintiffs,

v.

VARSITY BRANDS, LLC, BSN
SPORTS, LLC, VARSITY SPIRIT, LLC,
STANBURY, LLC, HERFF JONES, LLC,
BAIN CAPITAL, LP, CHARLESBANK
CAPITAL PARTNERS, LLC, VARSITY
BRANDS HOLDING CO., INC.,
VARSITY SPIRIT FASHION &
SUPPLIES, LLC, U.S. ALL STAR
FEDERATION, INC., USA
FEDERATION FOR SPORT CHEERING,
d/b/a USA CHEER, VARSITY
INTROPIA TOURS, LLC and JEFF
WEBB,

                Defendants.

CIVIL ACTION
FILE NUMBER:
2:20-cv-02782-SHL-atc

**RESPONSE TO DEFENDANTS'
MOTION TO STRIKE CLASS
ALLEGATIONS**

# TABLE OF CONTENTS

I.  SUMMARY ................................................................................................. 1

II.  FACTUAL BACKGROUND ...................................................................... 3

III.  APPLICABLE LAW.................................................................................. 5

IV.  DISCUSSION............................................................................................ 6

    A.  Rule 12(f) is Not the Proper Rule for Addressing

        Defendants' Concerns ................................................................... 6

    B.  That Three Proposed Class Representatives

        are Officers of the Plaintiffs is Easily Amended......................... 9

    C.  The Classes May be Ascertained ................................................. 9

        *i.*  *The Phrases Defendants Identify as Precluding*

              *Ascertainability are not Fail-Safe Classes*

              *Under Current Precedent.*................................................ 9

        *ii.*  *The Proposed Classes are Ascertainable.*....................... 12

    D.  That the Complaint Does not Allege That Two of the

        Proposed Class Representatives Purchased or Sold

        Each of the Products Defendants' Purchased or Sold

        Does not Make the Proposed Class Representatives' Claims

        Atypical or Defeat Standing to Sue ............................................ 13

        *i.*  *Typicality* ......................................................................... 13

    *ii.*  *Standing* ............................................................................................15

  E.  The American Spirit Plaintiffs Have Never

    Intended to Represent Gyms ....................................................................16

  F.  The American Spirit Plaintiffs can Show

    Adequacy of Representation .....................................................................17

  G.  The American Spirit Plaintiffs Can Show

    Predominance ...........................................................................................20

  H.  The American Spirit Plaintiffs Do not Seek

    the Absolute Dissolution of any Corporate

    Defendant Unless Absolutely Necessary. .................................................22

  I.  Regarding the Vast Majority of the American

    Spirit Plaintiffs' Class Allegations, the Corporate

    Defendants do not Contend those Allegations are Irrelevant....................22

V.  CONCLUSION ..................................................................................................23

**TABLE OF AUTHORITIES**

**Federal Cases**

*Albright v. Sherwin-Williams Co.*,

    No. 1:17 CV 2513, 2019 WL 5307068 (N.D. Ohio Jan. 29, 2019) ....................... 8

*Brown & Williamson Tobacco Corp. v. United States*,

    201 F.2d 819 (6th Cir. 1953) ......................................................................... 7

*Fallick v. Nationwide Mut. Ins. Co.*,

    162 F.3d 410 (6th Cir. 1998) ............................................................... 15

*Hicks v. State Farm Fire & Cas. Co.*,

    965 F.3d 452 (6th Cir. 2020) ........................................................... 3, 21

*In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*,

    No. 1:14-MD-2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015) ..................... 8

*In re Am. Med. Sys. Inc.*,

    75 F.3d 1069 (6th Cir. 1996) ............................................................. 14

*In re High-Tech Employee Antitrust Litig.*,

    985 F. Supp. 2d 1167 (N.D. Cal. 2013) .......................................... 17

*In re Se. Milk Antitrust Litig.*,

    739 F.3d 262 (6th Cir. 2014) .......................................................... 21

*Macy v. GC Servs. Ltd. P'ship*,

    897 F.3d 747 (6th Cir. 2018) ............................................................ 6

*Olagues v. Timken*,

    908 F.3d 200 (6th Cir. 2018) ............................................................ 8

*Pilgrim v. Universal Health Card, LLC*,

    660 F.3d 943 (6th Cir. 2011) ................................................................... 7

*Powers v. Hamilton Cnty. Pub. Defender Com'n*,

    501 F.3d 592 (6th Cir. 2007) ................................................................... 2

*Romberio v. Unumprovident Corp.*,

    385 F.App'x 423 (6th Cir. 2009) ..................................................... 10, 11

*Rikos v. Procter & Gamble Co.*,

    799 F.3d 497 (6th Cir. 2015) .......................................................... 7, 13, 20

*Rikos v. Procter & Gamble Co.*,

    No. 11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ......................... 7

*Stout v. J.D. Byrider,*

    228 F.3d 709 (6th Cir. 2000) ................................................................... 17

*Sutton v. St. Jude Med. S.C. Inc.*,

    419 F.3d 568 (6th Cir. 2005) ................................................................... 14

*U.S. ex rel. Bledsoe v. Cmty.Health Sys., Inc.*,

    342 F.3d 634 (6th Cir. 2003) ................................................................... 8

*United States ex rel. Day v. UT Med. Grp., Inc.*,

    No. 2:12-CV-2139-JPM-DKV, 2013 WL 12149635 (W.D. Tenn. Aug. 2, 2013) ............ 7

*Valley Drug Co. v. Geneva Pharm., Inc.*,

    350 F.3d 1181 (11th Cir. 2003) ............................................................... 17

*Young v. Nationwide Mut. Ins. Co.*,

    693 F.3d 532 (6th Cir. 2012) ................................................. 1, 9, 10, 11, 12 16, 18

iv

## Federal Statutes

Fed. R. Civ. P. 23 ............................................................................... 1

Fed. R. Civ. P. 23(b)(3) .................................................................... 20

Fed. R. Civ. P. 23(c)(4) ................................................................... 6, 7

Fed. R. Civ. P. 23(c)(5) ................................................................... 6, 7

Fed. R. Civ. P. 23(d)(1)(A) .......................................................... 5, 7, 8

Fed. R. Civ. P. 23(d)(1)(D) ................................................................. 7

Fed. R. Civ. P. 12(f) .................................................................. 1, 6, 7, 8

U.S. Const. art. III, § 2 ...................................................................... 15

## Other

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7

  A Federal Practice and Procedure § 1764 (3d ed. 2005) ...................................... 13

# I. SUMMARY

At the end of the day, this is a simple case.  Indeed, the American Spirit Plaintiffs allege simply that (1) the Corporate Defendants did or conspired to monopolize certain markets; (2) in doing so they violated federal and state laws; and consequently (3) Plaintiffs and those similarly situated are due redress.  To reach a just resolution, the parties now litigate to get it right.

In the Sixth Circuit, "[c]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012).  Nevertheless, the Corporate Defendants now move to strike Plaintiffs' class allegations (Compl. at ¶¶ 278-290).  By doing so, they aim to either (a) force thousands of proposed class members to file separate causes of action; or (b) encourage them to give up.  They found their position on Federal Rules of Civil Procedure 12(f) and the Rule 23 factors. (ECF No. 91 at 1).  From there, they build an argument that the Court should strike Plaintiffs' class allegations for seven broad reasons:

(1)     Several proposed classes are officers of the named plaintiffs and not the named plaintiffs themselves (ECF No. 91-1 at 5);

(2)     The proposed classes cannot be ascertained based on objective criteria (*Id.* at 6-9);

(3)     The complaint does not allege that two proposed class representatives purchased or sold each of the products Defendants purchased or sold (*Id.* at 9-10, 12);

(4)     Plaintiffs would create conflicts of interest by representing gyms (ECF 91-1 at 12);

(5)     The Complaint raises questions about how Varsity's "bid" program may differently affect Independent Event Producers (*Id.* at 13);

(6)     In none of the proposed classes can injury be shown by common proof (*Id.*-1 at 14); and

(7)     Dissolving the Defendants would harm the American Spirit Plaintiffs (*Id.* at 19).

In response, Plaintiffs acknowledge Defendants' well-done arguments which highlight a key, structural challenge in antitrust class actions.

Indeed, it is usually easier to identify a few alleged monopolizers than it is to both singularly classify all who allegedly suffered a monopolization and how they suffered it. *Powers v. Hamilton Cnty. Pub. Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("Defining a class so as to avoid, on the one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification."). Nevertheless, our civilization developed laws to protect those people and provide redress. Consequently—though persuasive authority exists on all sides—

Plaintiffs humbly submit a solution: to allow and encourage amendments to the American Spirit classes as appropriate. Particularly, to encourage amendments which would remove any impediment to a just determination of the rights and liabilities due the Defendants, the Plaintiffs, and those similarly situated. *See, e.g., Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 463 (6th Cir. 2020) ("[T]he district Court has the power to amend the class definition at any time before judgment.") (internal citations omitted).

## II. FACTUAL BACKGROUND

On July 24, 2020, the American Spirit Plaintiffs filed a class action Complaint in the Northern District of Georgia against several defendants including Varsity Brands, LLC. Thereafter, Judge Steve C. Jones transferred this case to this Court. Nevertheless, it is currently the first-filed pending antitrust case against Varsity Brands, LLC (and presumably the other Corporate Defendants).

The "Class Allegations" portion of the Complaint contains allegations tracking the Rule 23 requirements for class certification: numerosity, commonality, typicality, adequacy of representation—and in this case—predominance. Moreover, among many other assertions, that section includes the following proposed class definitions with exclusions[1]:

---

[1] Excluded from each Class are Defendants, their parent companies, subsidiaries, affiliates, franchisees, officers, executives, and employees; any entity that is or has been partially or wholly owned by one or more Defendants or their respective subsidiaries; States and their subdivisions,

(a)     **Independent Event Production Class**—All natural persons or entities in the United States that have directly suffered due to Varsity's monopolistic activities as hereinabove described, who have suffered in the form of a loss of the share of the market in the business of competition event productions during the class period for the last four years prior to the date of the filing of this complaint.  This Plaintiff Class has lost the equivalent of a 20% share of the business of competition event productions.

(b)     **Competitive, College, High School, and Junior High School Parent Class**—All natural persons or entities in the United States that directly or indirectly paid Varsity or any wholly or partially owned Varsity subsidiary during the class period for the last four years prior to the date of the filing of this complaint that have paid Varsity enhanced fees for uniforms, competition fees, camp fees, insurance, travel and accommodation fees, school paraphernalia such as class rings, yearbooks, graduation caps and gowns or graduation announcements, or merchandise.  These enhanced fees will be determined through the evidence at trial by comparing competitors' merchandise or services and pricing to those charged by Varsity.

(c)     **The Cheer Camp Market Class**—All natural persons or entities in the United States that lost a share of the scholastic and competition cheerleading camp

---

agencies and instrumentalities; and any judicial officer presiding over this matter and his or her staff. (Compl. at ¶ 280).

market that have directly suffered due to Varsity's monopolistic activities as hereinabove described, who have suffered in the form of a loss of the share of the market in the business of scholastic and competition cheer camp during the class period for the last four years prior to the date of the filing of this complaint. This Plaintiff Class has lost the equivalent of a 20% share of the business of the scholastic and competition cheer camp market.

(d) **Apparel, Athletic Equipment and Merchandise Class**—All natural persons or entities in the United States that have directly suffered due to Varsity's monopolistic activities as hereinabove described, who have suffered in the form of a loss of the share of the market in the business of apparel, athletic equipment, and cheer merchandise during the class period for the last four years prior to the date of the filing of this complaint. This Plaintiff Class has lost the equivalent of a 20% share of the business of apparel, athletic equipment, and cheer merchandise sales.

The Corporate Defendants argue, however, that pursuant to Fed. R. Civ. P. 12 (f) the Court should *strike* the *entire* Class Allegations portion of the Complaint. (ECF No. 91). Indeed, as discussed below, their arguments touch on commonality, typicality, adequacy of representation, and predominance; they evidently concede numerosity.

### III. APPLICABLE LAW

"In conducting an action under this rule, the court may issue orders that [ ] determine the course of proceedings[.]" Fed. R. Civ. P. 23(d)(1)(A). Indeed, "[i]n the class action context, a district court is given substantial discretion in determining whether

to certify a class, as it possesses the inherent power to manage and control its own pending litigation." *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 761 (6th Cir. 2018) (internal quotations omitted).

"Particular Issues. When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

"Subclasses. When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5).


## IV.    DISCUSSION

With the following, the American Spirit Plaintiffs will address each of the Corporate Defendants' seven arguments in turn.

### A.    Rule 12(f) is Not the Proper Rule for Addressing Defendants' Concerns.

To be clear, Fed. R. Civ. P. 12(f) holds "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This is the Rule Defendants apparently cite as a support for the "striking" portion of their motion to strike class allegations. (ECF No. 91 at 1). A careful reader will note, however, ***no*** charge in Defendants' motion that Plaintiffs' class allegations—in whole or in part— are redundant, immaterial, impertinent, or scandalous. Consequently, by their own terms Defendants' issues with Plaintiffs' class allegations seem less well addressed by Rule 12(f)

and more properly addressed by, say, Rule 23(d)(1)(A), Rule 23(c)(4), Rule 23(c)(5)—or as a last resort—Rule 23(d)(1)(D).[2]

In fairness, the Corporate Defendants can (and do) point to *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)[3]. There, they say, is a case in which the 6th Circuit found no abuse of discretion in striking class allegations under Rule 12(f). True. Upon close inspection, however, *Pilgrim*, may be less applicable than a quick glance might indicate.

In that case, for example, plaintiffs evidently conceded that their class allegations were redundant, immaterial, impertinent, or scandalous. *Id.* Moreover, they evidently did not offer that their class definition could be refined as the case proceeded. *Id.* Instead, they evidently doubled-down and argued their class—reliant on the application of several states' laws—could be certified as defined. *Id.* Further, they added an argument against the motion's timing but not its substance. *Id.*

That case is very different from this one. First, unlike in *Pilgrim*, the American Spirit plaintiffs do not concede—and Defendants do not argue—that the class allegations

---

[2] *See, generally, United States ex rel. Day v. UT Med. Grp., Inc.*, No. 2:12-CV-2139-JPM-DKV, 2013 WL 12149635, at *2 (W.D. Tenn. Aug. 2, 2013) ("A Rule 12(f) motion to strike 'should be granted only when the pleading to be stricken [sic] has no possible relationship to the controversy.'") (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

[3] Defendants also cite as persuasive authority several district court opinions such as *Rikos v. Procter & Gamble Co.*, No. 11-cv-226, 2012 WL 641946, at * 3 (S.D. Ohio Feb. 28, 2012). But careful observation reveals a Sixth Circuit tendency to simply amend class definitions. In *Rikos*, for example, the Sixth Circuit ultimately *affirmed* class certification via Plaintiffs' amended Complaint. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 527 (6th Cir. 2015). The other cases Defendants cite were either unreported or out-of-circuit.

are redundant, immaterial, impertinent, or scandalous.  *Cf.  In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 1:14-MD-2508, 2015 WL 5166014, at *41 (E.D. Tenn. June 24, 2015) ("A court that has examined the *Pilgrim* decision found it distinguishable on the basis that . . . the plaintiffs readily conceded that the class was 'purposely' overbroad and was not ascertainable.").  Second, unlike in *Pilgrim*, the American Spirit plaintiffs offer that its class allegations—as is often the case—can be amended to reach a just resolution.  *See Albright v. Sherwin-Williams Co.*, No. 1:17 CV 2513, 2019 WL 5307068, at *17 (N.D. Ohio Jan. 29, 2019) ("Plaintiffs have offered, in the alternative, that the court certify [more focused] classes for [amenable] claims. This was not discussed in *Pilgrim*.").  Third, unlike in *Pilgrim*, the American Spirit plaintiffs take issue with the *substance* and not just the timing of Defendants' motion.  Consequently, the outcome can be different.  *Olagues v. Timken*, 908 F.3d 200, 204 (6th Cir. 2018) ("**Rule 12(f) is neither an authorized nor proper way to procure the dismissal of all or a part of a complaint**.") (quoting 5C Wright & Miller, Fed. Prac. & Proc. § 1380 (3d ed. supp. 2018)) (emphasis added).

Thus, Defendants' issues may be better addressed by an order to amend any deficiencies the Court finds.  Fed. R. Civ. P. 23(d)(1)(A). *See, e.g.*, *U.S. ex rel. Bledsoe v. Cmty.Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003).  In cases "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Id.*

**B.** **That Three Proposed Class Representatives are Officers of the Plaintiffs is Easily Amended.**

Defendants point out that, for example, the proposed representative for the purported Independent Event production Class is found in the Complaint as "David Owens with Rockstar Champions, LLC." (Compl. at ¶ 292). In fairness, Defendants are right: "with" is not "the same as." Consequently, Plaintiffs can amend the three problematic proposed class representative descriptions before moving for class certification. For example, "David Owens with Rockstar Champions, LLC" can become "~~David Owens with~~ Rockstar Champions, LLC." Problem solved.

**C.** **The Classes May be Ascertained**

    *i.* *The Phrases Defendants Identify as Precluding Ascertainability are not Fail-Safe Classes Under Current Precedent.*

Defendants argue the Court could not certify the purported classes because the classes are not sufficiently ascertainable. (ECF No. 91-1 at 6-9). Specifically, they suggest that class definitions with the phrases "harm [*sic*] by loss of market shares" or "enhanced fees" constitute impermissible "fail-safe" classes. *Id.* This disapproval of fail-safe classes is well taken. Indeed, the Sixth Circuit does not permit such classes, classes which "include[] only those who are entitled to relief." *Cf. Young v. Nationwide Mut. Ins. Co.*,

693 F.3d 532, 538 (6th Cir. 2012) (affirming certification of classes which "include[d] both those entitled to relief and those not.").

In support of their argument, Defendants rely primarily on *Romberio v. Unumprovident Corp.*, 385 F.App'x 423, 431 (6th Cir. 2009).[4] That case was a class action to recover for under-paid long-term disability benefits. As part of the litigation, the *Romberio* Defendants appealed a decision granting certification of a questionable class. Notably, the class definition at issue included:

> All plan participants and beneficiaries insured under . . . . plans issued by
> UnumProvident throughout the United States who have had a long-term
> disability claim denied, terminated, or suspended on or after June 30, 1999
> by UnumProvident or one or more of its insuring subsidiaries *after being
> subjected to any of the practices alleged in the Complaint.*

*Romberio*, 385 F.App'x at 427 (emphasis added). Upon review, the Sixth Circuit Court of Appeals found that this definition did "little to distinguish between the set of individuals whose claims were properly denied for valid medical reasons and the set of individuals whose claims were improperly denied for profit-driven reasons." *Id.* at 431.

---

[4] Defendants also cite three unreported decisions, a district court opinion applying fail-safe clauses specifically in the TCPA context, a Sixth Circuit opinion predating *Young*, and a district court opinion addressing a proposed class of those who "paid or reimbursed" the purchase price of certain prescription drugs. In that last case, overlapping insurance coverage made it impossible to identify from the defendant's records who "paid or reimbursed" the purchase price. That is not a problem in this case.

Consequently, the appellate Court reversed. But that decision is not particularly applicable to this case.

In this case, the more applicable decision is *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). First, to the extent of any conflict, *Young* succeeded *Romberio.* Second, unlike in *Romberio*, the American Spirit Plaintiffs do not contend that *only some* of Defendants' customers in the defined markets suffered and should be class members. Instead, the American Spirit Plaintiffs allege that *all* of Defendants customers in the defined markets suffered monopolistic injury. (Compl. at ¶¶ 253-254) ("As a direct and proximate result of Varsity's unlawful and anti-competitive Exclusionary Scheme, Plaintiffs and the Proposed Classes have paid higher prices for competitions, apparel, cheerleading camps, athletic equipment, and related goods and services bought directly from Varsity than they would have paid in a competitive marketplace absent the exclusionary scheme, and have thereby suffered, and continue to suffer, antitrust injury."). Finally, under *Young*, an impermissible fail-safe class is simply "one that includes *only* those who are *entitled* to relief." *Young*, 693 F.3d at 538. In this case, the American Spirit Plaintiffs' purported classes are defined without regard to whether they are entitled to relief; if certified, these classes could yet lose on the merits. Consequently, the American Spirit Plaintiffs' classes are not unascertainable fail-safe classes under current precedent.

ii.     *The   Proposed   Classes   are*

        *Ascertainable.*

To be sufficiently ascertainable pursuant to Rule 23, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537–38.

Plaintiff's proposed classes meet this requirement. The direct purchaser class can easily be identified through the Defendants' purchaser records. For instance, a parent of a school cheerleader is directed by the school to the Defendants' web site where it has a portal for their school. This portal tells the parent how to measure their child, what measurements are needed, requests name, address, and the parent then enters their credit card info and completes the purchase. This is an example of a direct purchaser class member. The same procedure is followed when a competition gym places an order with a Defendant. The gym, or a Varsity salesperson, instructs the parents as to the measurements needed to order a uniform, the gym collects the same information (parent name, address) from each parent for their child, collects the money from each parent for the purchase, and then sends the money and individualized information with payment to a Defendant. This would encompass the indirect purchaser class member because the parent is following the same steps but is paying indirectly through the gym or school for the purchase. All of these purchaser records are easily found in the Defendants' computer files.

**D.** **That the Complaint does not Allege that Two Proposed Parent class Representatives Purchase or Sold each of the Products Defendants' Purchased or Sole does not make the Proposed Class Representatives' Claims Atypical or Defeat Standing to Sue.**

Defendants note that two Proposed Class Representatives are not alleged to have purchased or sold each of the products and services Defendants purchased or sold. (ECF No. 91-1 at 9-10, 12-13). This fact, they contend, indicates the Proposed Class Representatives' claims are not typical. (ECF No. 91-1 at 10, 13). Moreover, they contend this fact indicates Proposed Class Representative American Spirit & Cheer Essentials has no standing to sue. (ECF No. 91-1 at 13).

*i.* *Typicality*

Regarding typicality, "many courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *Rikos*, 799 F.3d at 509 (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A Federal Practice and Procedure § 1764 (3d ed. 2005)). Under that reasoning, the proposed class representatives' claims are typical because their claims—just as their purported class' claims—stem from the Corporate Defendants' unitary course of monopolistic conduct.

The Corporate Defendants, however, propose an alternative understanding. Indeed, they propose that "in an antitrust case, a class cannot be certified when its proposed representatives did not purchase the products at issue because such persons do not have standing."[5] (ECF No. 91-1 at 9). Their support for that contention hangs primarily on *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996).[6] That, however, was not an antitrust case alleging all purchasers suffered monopolistic injury. Instead, that was a case about several models of failed prosthetics.

That case is very different from this case. In that case, the proposed class representative's claims where atypical because his difficulty with the prosthetic he received was specific to his medical history and condition. Moreover, proposed class members used different prosthetic models and each experienced distinct difficulties. Conversely, in this case the monopolistic injury the proposed class representatives suffered was not specific to their history or condition. Neither did every proposed class member experience a distinct difficulty. Instead, every member of the proposed class experience the same difficulty: being counterparty to a monopoly. (Compl. at ¶ 254).

---

[5] Defendants seem to cite *Sutton v. St. Jude Med. S.C. Inc.*, 419 F.3d 568, 570 (6th Cir. 2005) for this proposition. *Sutton*, however, was not an antitrust case. Instead, that was a case addressing typicality in the context of medical monitoring costs for future harm.

[6] Defendants also cite two other opinions. One was a 6th Circuit opinion. In that opinion, in the court found proof that a representative was wrongfully denied long-term disability coverage did not indicate other members were as well. Defendants' other citation was to an unreported district court decision.

Consequently, the proposed class representatives can show typicality at the time of class certification.

ii.      *Standing*

Regarding standing, the rule stems from the Constitution.  Under it, the Judicial Power extends to, inter alia, "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States . . . between Citizens of different States." U.S. Const. art. III, § 2.  Particular to Defendants' argument, "in its constitutional dimension, standing imports decidability: whether the plaintiff has made out a 'case or controversy' *between himself and the defendant* within the meaning of Article III." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) (holding that once a potential class representative establishes his individual standing to sue there is no additional constitutional standing requirement related to his suitability to represent a putative class) (emphasis in original).

In this case, Defendants may confuse (1) a plaintiff's standing under Article III vis-à-vis a defendant with (2) the relationship between a potential class representative and absent class members, which is governed by rule 23.  *Compare Id.* at 422 with ECF No. 91-1 at 12.  Indeed, they argue that "[n]either Ms. Weber nor American Cheer and Spirit Essentials [have] standing to pursue claims as to products in which they do not compete[.]" (ECF No. 91-1 at 13). The proper standing inquiry, however, is whether the American Spirit Plaintiffs set out a case or controversy *between themselves and the Defendants*.  In

that regard, the American Spirit Plaintiffs contend—and the Corporate Defendants do not contest—that Ms. Weber and American Cheer have done just that. (Compl. *passim*).

Consequently, the Plaintiffs have standing because they set out a distinct and palpable injury to *themselves*.

**E.  The American Spirit Plaintiffs Have Never Intended to Represent Gyms.**

Plaintiffs *absolutely agree* with Defendants' argument that including gyms in the American Spirit Plaintiffs' classes would cause conflicts of interest.  That is a key reason why the American Spirit Plaintiffs do not wish consolidation with the *Fusion Elite* case. (Mem. In Supp. of Mot. to Appoint Interim Lead Class Counsel, ECF No. 64-1 at 2).  The American Spirit Plaintiffs never intended to represent gyms.  Consequently, they would happily amend their proposed class definitions to make that clear.

**F.  The American Spirit Plaintiffs can Show Adequacy of Representation.**

Defendants' conflicts arguments are properly addressed within this Circuit as part of an adequacy inquiry.  Indeed, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Young*, 693 F.3d at 543.  In that regard, the Sixth Circuit "looks to two criteria for determining adequacy of representation: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class

through qualified counsel." *Id.* (internal quotations omitted).  To the first requirement, the proposed class representatives have common interests with unnamed members of their classes. (*Compl.* at ¶ 269, 282).   To the second requirement, the Court may take judicial notice of the current and preceding fillings to find the representatives are vigorously prosecuting the interest of the class through qualified counsel.

Defendants argue, however, that "there are disabling internal conflicts among class members." (ECF No. 91-1 at 10).  In support, they rely primarily on *Stout v. J.D. Byrider,* 228 F.3d 709, 717 (6th Cir. 2000).[7, 8]  That was a case alleging auto warranty fraud.   The *Stout* court determined the class representatives "had interests antagonistic to the remainder of the putative class because [inter alia (1)] Stout had already filed and voluntarily dismissed a separate individual action in state court against the same Defendants, thus preserving his right to pursue that suit should the class action claim be dismissed; [(2)] the named Plaintiffs obtained repairs or alternative proposed resolutions from Defendants which differ from other class members[;] and [(3)] the named Plaintiffs'

---

[7] Defendants cite one out-of-circuit opinion for the proposition that "to our knowledge, no circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003).  On closer inspection, however, courts often certify classes where some—if not all—class members derived a net economic benefit from the same conduct alleged to be wrongful. See, e.g., *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1190 (N.D. Cal. 2013) (certifying class where employees alleged antitrust employment activity lowered—but still paid—wages).   Indeed, most—if not all—victims of monopolization incur a net economic benefit from being counterparty to a monopolizer.  The problem comes when firms use monopoly power to extract supercompetitive profits (by charging more and/or paying less).

[8] Defendants also cite an airplane noise case in which the proposed class representative had already lost on the merits.

claims arise from different transactions and alleged injury." *Id*. at 717. That case, of course differs from this.

First, no proposed class representative in this case has filed and voluntarily dismissed a separate action against the same defendants. Second, no proposed class representative in this case has received proposed resolutions of their claims which differ from other class members. Third, the proposed class representatives' claims in this case arise from class-wide transactions and alleged injury.

Nevertheless, Defendants argue "disabling conflicts" exist in two purported classes: (1) the Competitive, College, High School, and Junior High School Parent Class; and (2) the Independent Event Production Class. (ECF No. 91-1 at 11, 13). Regarding the first, Defendants focus on Varsity's rebate program with gyms.[9] As discussed elsewhere, however, none of the named American Spirit Plaintiffs are gyms and neither have they ever sought to represent gyms. Consequently, the *American Spirit* Plaintiffs can happily clarify any confusion by amendment.

Moreover, the Defendants make the self-serving and speculative allegation that, without the admissions fees Varsity charges at events, "gyms could pay more in entry fees." (ECF No. 90-1 at 12). As stated in the Complaint, however, admission fees are unnecessary. (Compl. at 174). As proof, the Jam Brands competitions—which never

---

[9] The Corporate Defendants also briefly allege some conflict within groups of unnamed competitors, spectators, and parents. (ECF No. 91-1 at 12). But such allegations do not fit the adequacy analysis under *Young*.

charged an entry fee—were successful and profitable for many years. It was Varsity, however, that acquired Jam Brands and greedily started charging parents and family members escalating admission fees. Thus, Defendants fee/conflict speculation is unpersuasive.

Regarding the purported Independent Event Production Class, Defendants cast the American Spirit Plaintiffs' claims as revolving around Varsity's "bid" program. That program allows access to certain cheerleading competitions. Indeed, Defendants write "the entire premise of the proposed Independent Event Production Class is that Varsity's so-called 'monopoly power' has kept members of the proposed class from competing." (ECF. No. 91-1 at 13). The Defendants go on to point out that some event producers, however, may offer bids while others are may not. *Id.* This, the Corporate Defendants argue, is a "disabling conflict." *Id.* Defendants, however, misunderstand the monopolistic injury.

Looking closer at the complaint, however, yields a different perspective. Fundamentally, the purported Independent Event Production Class alleges that the Corporate Defendants exclusionary scheme caused them "loss of the share of the market in the business of competition event productions during the class period." (Compl. at ¶ 279). Thus, Plaintiffs do not contend that the Corporate Defendants have "kept them from competing." Indeed, the Plaintiffs are fighters. But it, Plaintiffs do contend that the Corporate Defendants have created illegal restraints on trade, engaged in monopoly making, and made agreements not to use the goods of competitors in violation of federal

19

law.  (Compl. at ¶¶ 272-274).  In that regard, the American Spirit Plaintiffs allege that the Corporate Defendants apply several tactics.  (Compl. *passim*).  True, the "bid program" is *one* tactic.  It is, however, *only* one tactic.

Consequently, the American Spirit Plaintiffs can show adequacy of representation at the class certification stage.

### G.     The American Spirit Plaintiffs Can Show Predominance.

The Corporate Defendants also argue that "all four proposed classes cannot be certified because harm cannot be shown by common proof." (ECF 91-1 at 14).  With that allegation, the Corporate Defendants are referring to the predominance requirement of Fed. R. Civ. P. 23(b)(3).  Under that rule, "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members[, inter alia.]" *Id.* Thus, as the *Rikos* court explained, "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Rikos*, 799 F.3d at 521.[10]

Defendants primarily argue that "it is not possible to show harm [to a class] by common proof when [the class members] are as diverse as those in Plaintiffs' proposed classes, purchased products that are as diverse as Plaintiffs identify, or competed in such numerous products and services as Plaintiffs posit."  (ECF 91-1 at 18).  Moreover, they

---

[10] The Corporate Defendants also cite two out-of-circuit opinions for the same proposition.

argue it "would be virtually impossible" to "prove that all the acts they say were illegal were actually illegal" or to demonstrate injury (ECF 91-1 at 16 n.1). To the contrary, the American Spirit Plaintiffs can show common questions predominate.

Remember, at the end of the day, this is a simple case. Indeed, Plaintiffs allege simply that (1) Defendants did or conspired to monopolize certain markets; (2) in doing so they violated federal and state laws; and consequently (3) Plaintiffs and those similarly situated are due redress. Thus the predominating common questions include: (1) whether the Corporate Defendants possess monopoly power in the relevant markets; (2) whether the Corporate Defendants engaged in unlawful exclusionary conduct; and (3) whether the Corporate Defendants caused injury to the American Spirt Plaintiffs and their purported classes. Thus where, as here, "adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." *Hicks*, 965 F.3d at 460 (internal quotations omitted). Consequently, Plaintiffs can show predominance.

Moreover, the Corporate Defendants' implication that it would be "virtually impossible" to prove sufficient illegality is not well taken. For example, "[f]or a plaintiff to successfully bring an antitrust claim under Section 1 of the Sherman Act, the plaintiff must establish that the defendant's actions constituted an unreasonable restraint of trade which caused the plaintiff to experience an antitrust injury." *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 269 (6th Cir. 2014). The American Spirit Plaintiffs contend they can show both. First, a jury could find the exclusionary scheme exists and is unreasonable. Second,

ascertainable loss can be proffered via damage models presented by experts.  (Compl. ¶ 257, 258-262).  Thus, Plaintiffs can prove sufficient illegality.

**H.    The American Spirit Plaintiffs Do not Seek the Absolute Dissolution of any Corporate Defendant Unless Absolutely Necessary.**

Defendants note that "the injunction they seek would eliminate the complained of conduct . . . [but] would harm the many members of the proposed classes who, according to the Complaint, receive the benefit from those arrangements." (ECF. No. 91-1 at 18). This concern appears to be in large part for gyms.  *Id.*  If so, Plaintiffs will happily make clear in their class definitions before a motion for certification that they do not seek to represent gyms.

To the larger point, however, Plaintiffs recognize the extreme nature of corporate dissolution.  Consequently, Plaintiffs seek it only "if appropriate." (Compl. at 127).  In the end, if Defendants make good for any harm and amend their ways, we reach a just resolution.

**I.    Regarding the Vast Majority of the American Spirit Plaintiffs' Class Allegations, the Corporate Defendants do not Contend Those Allegations are Irrelevant.**

The American Spirit Plaintiffs' class allegations are relevant to this lawsuit. Indeed, the Corporate Defendants challenge only a few.  Though not entirely addressed

by Defendants' motion, the American Spirit Plaintiffs' class allegations include important questions for resolving this controversy. Those questions include, for example:

1. Whether the markets as defined are the relevant markets;

2. Whether the Defendants possess monopoly power in the relevant markets;

3. Whether Varsity engaged in unlawful exclusionary conduct;

4. Whether the Defendants caused injury to the Plaintiffs and their purported classes;

5. The appropriate measure of damages; and

6. The propriety of declaratory an injunctive relief.

(Compl. at 118 -121). Consequently, preserving those allegations would serve the cause of reaching a just resolution.

## V. CONCLUSION

Instead of striking the entirety of the American Spirit Plaintiffs' class allegations, the Court may make a proper order to amend any problems.

Respectfully submitted,

This 15th day of December, 2020.

s/ Robert A. Falanga
Robert A. Falanga, Esq.
Attorney Bar No. 254400
Attorney for Plaintiffs and their Putative Classes

s/  Kobelah Svensen Bennah
Kobelah Svensen Bennah
Attorney Bar No. 378113
Attorney for Plaintiffs and their Putative
Classes

LAW OFFICES
FALANGA & CHALKER
11200 Atlantis Pl #C
Alpharetta, GA 30022
Phone: (770) 955-0006
Fax: (770) 955-2123
robert@falangalaw.com
kobelah@falangalaw.com