```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```
_____

| | |
|---|---|
| **AMERICAN SPIRIT AND CHEER ESSENTIALS, et al.,** ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 20-cv-2782-SHL-tmp |
| **VARSITY BRANDS, LLC, et al.,** ) ) ) | |
| Defendants. ) | |

_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS UNDER RULES 37 AND 41 OR, IN THE ALTERNATIVE, TO COMPEL PRODUCTION OF DOCUMENTS**

_____

Before the court by order of reference is defendants' Motion to Dismiss Under Rules 37 and 41 or, in the Alternative, to Compel Production of Documents, filed on February 18, 2022. (ECF No. 171.) The undersigned finds that a hearing is unnecessary and that the motion can be resolved on the briefs. For the reasons below, defendants' Motion to Compel is GRANTED, and their Motion to Dismiss is DENIED.[1]

---

[1] While a magistrate judge must generally submit a report and recommendation on a dispositive motion under 28 U.S.C. § 636, "the majority of courts to consider the issue have concluded that when a party brings a motion for discovery sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the moving party, governs the magistrate judge's authority over the motion." Kindred v. Memphis Light, Gas & Water Division, No. 19-cv-2660-TLP-tmp, 2021 WL 6751896, at *2 (W.D. Tenn. Apr. 21, 2021) (quoting Builders Insulation of Tenn., LLC v. S. Energy

## I. BACKGROUND

The present case involves anti-trust claims brought against Varsity Brands, LLC, its affiliated brands and companies, and its prior and present owners. In brief, the plaintiffs allege that the defendants conspired to and did in fact form a monopoly over the cheerleading and scholastic merchandise industry in the United States. The plaintiffs filed their complaint on July 24, 2020, seeking class certification, damages, and injunctive relief. (ECF No. 1.) The case was transferred from the Northern District of Georgia to this court on October 28, 2020. (Id.)

This motion is predicated on disputes regarding the plaintiffs' production of documents. The facts underlying the present conflict are largely undisputed and drawn from the declaration of defendants' counsel as well as exhibits attached to the motion and response.

Defendants served all plaintiffs with their first Requests for Production on December 18, 2020. Plaintiffs responded a month later on January 18, 2021.[2] (ECF No. 171-6 at 34, 169; ECF No. 171-

---

Sols., No. 17-cv-2668-TLP-tmp, 2020 WL 265297, at *4-5 (W.D. Tenn. Jan. 17, 2020) (collecting cases)). Since the undersigned declines to dismiss the case, 28 U.S.C. § 636(b)(1)(A) permits the undersigned to proceed by order rather than report and recommendation.

[2]While the document lists the date as the "18th day of January, 2020," it is clear that this is a typographical error. (ECF No. 171-6 at 34.) The parties were not permitted to serve document

- 2 -

7 at 33, 64.) Defendants served forty-five requests on each of the four plaintiffs: American Spirit, Jeff & Craig Cheer, Ashley Haygood, and Rockstar Cheer. (ECF Nos. 171-2, 171-3, 171-4, 171-5.) Each of the plaintiffs responded separately. In their responses, the plaintiffs raised numerous objections, but agreed to produce responsive documents as to most requests, with the right to supplement their productions later as discovery continued. As to the remaining requests, plaintiffs either objected on relevance grounds or stated they possessed no relevant documents. In addition to agreeing to produce responsive documents, plaintiffs indicated that they were attaching documents responsive to certain requests to the responses. Further, in many of their responses, plaintiffs "incorporate[d] by reference herein any documents produced by any of the coplaintiffs in their discovery responses[.]" (See, e.g., ECF No. 171-2 at 2.) At no point did plaintiffs indicate that they were withholding any documents in their possession due to their objections. The present motion concerns only the requests identified below, to which the plaintiffs agreed to produce relevant documents either as attachments to their responses or at some point in the future:

---

requests before December 16, 2020, under the terms of the court's Scheduling Order. (ECF No. 100.)

American Spirit in response to requests 1(a), 1(b), 1(d), 1(g), 1(h), 1(i), 1(j) 1(k), 2-27, 30-41, 44, and 45.

Jeff & Craig in response to requests 1(a), 1(b), 1(d), 1(g), 1(h), 1(i), 1(j) 1(k), 2-11, 13, 15, 17, 18, 21-25, 27, 30-41, 44, and 45.

Haywood in response to requests 1(a), 1(b), 1(d), 1(g), 1(h), 1(i), 1(j) 1(k), 2-10, 15-18, 21-26, 30-41, 44, and 45.

Rockstar in response to requests 1(a), 1(b), 1(d), 1(g), 1(h), 1(i), 1(j) 1(k), 2-11, 13, 15, 17, 18, 21-25, 30-41, 44, and 45.

The attachments to the responses noted above consisted of two PDF files: one from American Spirit and the other from Jeff & Craig. (ECF No. 171-6 at 1.) The American Spirit PDF consists of 99 pages comprising an unclear number of complete documents, email exchanges, and forms. (Id. at 36-135.) No document breaks are included and complete documents are not separately labeled. (Id.) None of the documents are labeled with Bates numbers. (Id.) Four of the pages appear to have been poorly scanned and border on illegible. (Id. at 77-81.) The Jeff & Craig PDF consists of 18 pages, again without document breaks or labels. (ECF No. 171-6 at 170-189.) Most pages consist of multiple printed and scanned emails, and around one-third are completely illegible. Rockstar and Haywood did not produce any documents despite stating that they would do so in their individual responses. (ECF No. 171-7 at 3-33, 37-64.)

By their own account, defendants waited almost a full year, until December 22, 2021, to respond. (ECF No. 171-1 at 6, ECF No. 171-7 at 69.) In an email to plaintiffs' counsel, defendants identified the issues described above and argued that the two PDFs did not comply "with the jointly stipulated Protocol for the Discovery of Electronically-Stored Information and Hard Copy Documents," or "ESI Protocol," that had been agreed to in the case. (ECF No. 171-7 at 69-70.) Specifically, the defendants argued that the ESI Protocol required responsive documents to be produced "in folders as single page TIFF images along with a cross reference image loadfile that clearly delineates the images by document," and that "extracted text" from all of the documents needed to be provided in a separate file and folder. (Id. at 70.) Plaintiffs responded one week later, on December 29, 2021, briefly stating that they would "look into this and get back with [defendants]." (Id. at 72.)

On January 5, 2022, Haygood produced 19 documents.[3] (Id. at 75, ECF No. 171-6 at 1.) However, in a January 28, 2022 email, defendants argued that Haygood's production had also not complied with the ESI Protocol and that the previously noted problems with the prior productions had still not been addressed. (ECF No. 171-7 at 75.) Defendants also stated that Rockstar had yet to produce

---

[3] Neither party attached this production to their briefs.

- 5 -

a single document and summarized the outstanding issues with all of plaintiffs' productions up to that point. (Id. at 76.) Plaintiffs substantively responded on February 3, 2022. (ECF No. 171-7 at 78-80.) They identified "three broad concerns" regarding the productions. First, they addressed defendants' complaints regarding compliance with the ESI Protocol. (Id. at 78.) Second, they acknowledged the issues with illegible or difficult to read documents in the American Spirit and Jeff & Craig PDFs. (Id.) Third, they conceded "that the Defendants did not receive some documents referenced in Ms. Haygood's Responses." (Id. at 78-79.) Plaintiffs did not address Rockstar's lack of production in this response.

Regarding the first concern, plaintiffs argued that the ESI Protocol was inapplicable since it was "never signed by the Court as an order" and was never "filed as a stipulation under Rule 29(b)." (Id. at 79.) However, they stated that "our professional duties of honesty and candor compel us to abide by the proposed Order as if it were an issued order or a filed stipulation. Consequently, we will do our best." (Id.) Plaintiffs then asked defendants to be more specific with their complaints regarding the ESI Protocol. (Id.) Plaintiffs also stated they would address the second and third concerns by sending or resending the prior productions, and mentioned that they "expect to send additional documents from the American Spirit Plaintiffs shortly." (Id.)

Around a month later, on February 4, 2022, plaintiffs re-produced the American Spirit PDF. (Id. at 82.) Rockstar then made its first productions on February 8, 2022. (Id.) Defendants wrote to plaintiffs again on February 10, 2022, outlining their issues with these productions, as well as the outstanding issues that had not been addressed. (Id. at 82-84.)

Defendants then filed the present motion on February 18, 2022, seeking to dismiss plaintiffs' claims due to insufficient production, or in the alternative, to compel production of documents. (ECF No. 171.) Plaintiffs responded on February 21, 2022, arguing that defendants' complaints were time barred by the terms of the court's Scheduling Order, that they have produced more than the 88 documents described above when productions from co-plaintiffs are considered, and that they "have and are continuing to put forward efforts to produce discovery[.]" (ECF No. 178 at 3.) Defendants then moved for leave to file a reply, which the court granted on March 9, 2022. (ECF No. 183.)

## II.  ANALYSIS

**A.  Deadline to File Motion**

As a preliminary matter, the court must address whether the defendants' present motion was timely brought. The main argument in the plaintiffs' two-page response is that "by waiting until 2022 to file their motion, the Defendants waived their right to contest the American Spirit responses under the terms of the

Scheduling Order. Indeed, the Scheduling Order allowed such disputes only within 90-days of service of the first requests." (ECF No. 178 at 2.) Defendants disagree, arguing that "[t]here was and is no deadline to bring a motion to compel the production of documents that a party *promised to produce* as Plaintiffs did here." (ECF No. 182-1 at 2) (emphasis in original).

Plaintiffs point to the following deadline contained in the court's Scheduling Order:

> [Deadline for] Parties to submit disputes to court regarding any areas of dispute regarding documents to be produced in response to requests for production: 90 days from service of the Parties' first Requests for Production.

(ECF No. 100 at 2.) The undersigned finds the above provision to be inapplicable to the present motion. This provision of the Scheduling Order sets a ninety-day deadline for parties to raise disputes with the court regarding another party's responses. Hence the connection between the ninety-day period and the "service of the Parties' first Request for Production"; since a party must respond to a Request for Production within thirty days, the ninety-day deadline gives parties time to resolve any issues regarding responses while making sure discovery proceeds without stalling. Fed. R. Civ. P. 34(b)(2)(A). Defendants have not taken issue with plaintiffs' responses, but rather the lack of *production* of documents that plaintiffs had already agreed to produce.

Further support for this reading comes from a separate provision of the Scheduling Order. In the Order's "Document Production" Section, the court set three deadlines. Parties were to begin "rolling production of documents in response to requests for production within 75 days of service of the relevant request for production of documents," to completely produce any transactional data within 100 days, and to fully complete document production within 165 days, all "subject to any unresolved objections of the producing Party." (ECF No. 100 at 2.) As the defendants note, a dispute over what a party actually produced would not be ripe for resolution by the court until the deadline for production had already passed. If the ninety-day deadline were applicable to disputes regarding produced documents, it would require disputes regarding production to be brought seventy-five days *before* a party was even required to finish production.

It appears that the Scheduling Order does not set a deadline for disputes regarding produced documents. While simply tacking on the ninety-day deadline to the end of the 165-day production period has some appeal from a consistency standpoint, the Scheduling Order's language does not support that solution. Plaintiffs do repeatedly cite this court's prior order regarding their own Motion to Compel as evidence that the ninety-day deadline applies here as well. (ECF No. 177 at 11.) However, the two motions involve separate kinds of disputes. Plaintiffs' motion largely dealt with

the continuing viability of a Protective Order that effectively stayed discovery on several topics. The undersigned did not hold that the ninety-day deadline prevented the Motion to Compel from being brought on those issues, but instead held that the Protective Order was still operative and still barred discovery on those topics from proceeding. Complicating matters, the plaintiffs attached a full copy of their First Requests for Production to their Motion to Compel, which dealt with topics covered by the Protective Order *and* topics not covered by the Protective Order. Further, in their motion plaintiffs asked the court to "issue an order compelling [Defendants] to submit documents responsive to all outstanding requests[.]" (ECF No. 167-1 at 7.) Plaintiffs did not attach any responses defendants had offered to these "outstanding requests" or specify which requests were outstanding, which incorrectly suggested that defendants had not responded to their Requests for Production at all. Defendants' response notified the court that they had responded to the Plaintiffs' requests in full. Due to plaintiffs' failure to specify the requests at issue in their attachment and motion, the undersigned was forced to address requests that were *not* covered by the Protective Order but to which plaintiffs were now impliedly seeking to compel production. From the time these requests were initially served, the plaintiffs had ninety days to bring issues with defendants' responses to the court. The undersigned simply held

- 10 -

that plaintiffs had waived their right to contest responses to requests that were not covered by the Protective Order by failing to bring them in time.

The undersigned notes that defendants waited almost a full year after they received the production at issue to file the present motion, or alternatively, waited six months after the deadline for a complete production had passed. Defendants admit they did not contact plaintiffs regarding the issues with their production until December 22, 2021, even though the deadline for plaintiffs' completed production was June 1, 2021. (ECF No. 171-1 at 6.) They offer no reason for the delay. Such a delay at the very least reflects a lack of attention paid to these discovery issues, especially given the small size of the production. Despite defendants' failure to file the present motion in a more timely manner, based on the language of the Scheduling Order, the court finds that the motion is not time barred.

**B.   Sufficiency of Production**

Defendants take issue with plaintiffs' production and seek to have the case dismissed as a sanction pursuant to Federal Rules of Civil Procedure 37(b) and 41. (ECF No. 171 at 1.) In the alternative, they ask the court to order plaintiffs to produce documents in line with their prior responses. (Id.) Outside of the timeliness argument above, plaintiffs provide only a one-paragraph response addressing the sufficiency of production, noting that

defendants' statement that plaintiffs have produced only 88 documents "does not include all the relevant documents produced by the co-plaintiffs or Defendants themselves and incorporated by reference in the Plaintiffs' responses to discovery." (ECF No. 178 at 3.) Further, plaintiffs note that they recently produced "over 300 documents" and that "documents are being produced now by a company hired by the Plaintiffs and are being produced complying with protocols for production."[4] (Id.)

Federal Rule of Civil Procedure 41(b) grants district courts the authority to dismiss an action for failure of a party to comply with an order of the court. Schafer v. City of Defiance Police Dept., 529 F.3d 731, 736 (6th Cir. 2008). Rule 37(b)(2)(A) similarly grants authority to dismiss where a party fails to obey a discovery order. In both cases, dismissal is only appropriate "if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." Regional Refuse Sys. v. Inland Reclamation Co., 842 F.2d 150, 154-55 (6th Cir. 1988). Dismissal "for failure to cooperate in discovery is the sanction of last resort." Moses v. American Apparel Retail, Inc., No. 13-cv-2753-SHL-dkv, 2015 WL 4665968, at *3 (W.D. Tenn.

---

[4] The defendants argue that plaintiffs' claim that they are producing 300 documents is deceptive, and that "Plaintiffs' recent production merely re-produced exactly the same 88 documents that they had previously produced, which totaled only 318 pages and *still* did not comply with the ESI protocol." (ECF No. 182-1 at 4.)

Aug. 6, 2015) (quoting Beil v. Lakewood Eng'g. and Mfg. Co., 15 F.3d 546, 552 (6th Cir. 1994) (internal quotation marks omitted)). In order to determine whether dismissal is warranted, courts examine four factors:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

Edwards-Bradford v. Kellogg USA, LLC, No. 2:19-cv-02877-MSN-atc, 2021 WL 1579951, at *2 (W.D. Tenn. Jan. 15, 2021) (citing Shavers v. Bergh, 516 F. App'x 568, 569 (6th Cir. 2013)).

Plaintiffs seemingly do not contest that they have not completed their promised production despite passing the 165-day deadline.[5] (ECF No. 178 at 3) ("Plaintiffs have and are continuing to put forward efforts to produce discovery as evidenced by the recent RICOH production of over 300 documents.") However, they note that "these documents are being produced now by a company hired by the plaintiffs and are being produced complying with

---

[5] As discussed above, plaintiffs do briefly argue that documents "produced by the co-plaintiffs or Defendants themselves and incorporated by reference in the Plaintiffs' responses to discovery" should be considered along with the frequently cited 88 documents defendants claim constitute their entire production. (ECF No. 178 at 3.) While this point is well taken as to the ultimate document total, it does not relieve the plaintiffs of their obligation to produce responsive documents in their possession, unless such documents are duplicative of past productions or otherwise protected, which is not argued here.

- 13 -

protocols for production. In short, plaintiffs are not willfully denying discovery." (Id.) While it is unclear what the phrase "these documents" refers to specifically, the undersigned interprets from the context of the response that it refers to the documents defendants seek to compel with their motion. At this point, the undersigned does not find enough evidence to suggest that plaintiffs' failure to produce is due to bad faith. Further, while a "prior warning is not indispensable," the fact that plaintiffs have not been previously warned by the court that their failure to cooperate could lead to dismissal cuts against ordering such a harsh sanction. Fharmacy Records v. Nassar, 379 F. App'x 522, 524 (6th Cir. 2010) (citing United States v. Reyes, 307 F.3d 451, 458 (6th Cir. 2002)). Based on the representations in their response, plaintiffs are already engaged in attempts to complete the production and do not contest the continuing applicability of their prior promises to produce. And, as discussed above, defendants themselves have not been diligent in filing this motion, which also weighs against imposing sanctions on plaintiffs.

Thus, the court hereby ORDERS plaintiffs to complete that production. Plaintiffs are ORDERED to produce responsive documents in their possession to the Requests contained in Appendices A-D attached to defendants' motion. Further, these productions should be in line with the ESI Protocol contained at ECF No. 97-2 at 5-6. While this protocol is not an order, it was agreed to by all

parties, and plaintiffs do not raise any argument as to why it should not be applicable to this production. Indeed, plaintiffs have previously stated that "[their] professional duties of honesty and candor compel [them] to abide by the proposed Order as if it were an issued order or a filed stipulation." (ECF No. 171-7 at 79.) The undersigned notes that this order also constitutes a warning that willful failure to cooperate in discovery could lead to dismissal of plaintiffs' case under Rules 37(b) and 41(b).

### III. CONCLUSION

For the above reasons, the undersigned hereby ORDERS plaintiffs to produce all responsive documents in their possession to the Requests identified in Appendices A-D attached to defendants' motion by April 18, 2022, which is this case's discovery deadline. This production should be in accordance with the ESI Protocol.

IT IS SO ORDERED.

<div style="text-align:right">

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 23, 2022
Date

</div>