**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN SPIRIT AND CHEER ESSENTIALS, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:20-cv-02782-SHL-tmp |
| VARSITY BRANDS, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Before the Court are: (1) Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Under Federal Rules of Civil Procedure 37 and 41, filed May 25, 2022, (ECF No. 239 (sealed)), the Response from Plaintiffs, filed June 22, 2022, (ECF No. 250), and Defendants' Reply, filed August 9, 2022, (ECF No. 257); and (2) Defendants' Supplemental Motion to Dismiss Plaintiffs' First Amended Complaint under Federal Rules of Civil Procedure 37 and 41, filed October 18, 2022, (ECF No. 264 (sealed)), the Response from Plaintiffs, filed November 1, 2022, (ECF No. 274), and Defendants' Reply, filed December 2, 2022, (ECF No. 296). For the reasons described below, Defendants' Motions are **GRANTED**.

## <u>BACKGROUND</u>

What follows is the long, complex, and tortured history of discovery in this antitrust case. Given the highly fact-specific nature of the analysis necessary here, the procedural posture of this case is recounted below, followed by Defendants' specific allegations of discovery failures largely in full despite their overall length.

## I.      Procedural Disputes

The Court begins with the unceasing procedural discovery fights the Parties have engaged in.  Plaintiffs filed this Complaint on July 24, 2020, in the Northern District of Georgia. The case was transferred to this Court on October 28, 2020.  In their original Complaint, Plaintiffs alleged antitrust violations in a number of markets including Band Uniforms, Graduation Regalia, Cheer Competitions, Recreational Cheer, Athletic Equipment, and Cheer Camps.  (See ECF No. 1 at PageID 79-90.)

Defendants filed four motions to dismiss on December 1, 2020.  (ECF Nos. 92, 93, 94, & 95.)  On March 12, 2021, Defendants filed a motion for a protective order requesting, among other relief sought, that the Court suspend discovery in three of the alleged markets, namely Band Uniforms, Graduation Regalia, and Athletic Equipment, given the pending motions to dismiss.  (ECF No. 118.)  Magistrate Judge Claxton granted the protective order in part on June 1, 2021.  (ECF No. 132.)  Discovery in the three markets was suspended until the pending motions to dismiss were resolved.  (Id. at PageID 793.)  Discovery in the other markets proceeded with a close of fact discovery deadline of April 18, 2022.

This Court resolved one motion to dismiss on October 28, 2021, dismissing former Defendants Bain Capital, LP and Charlesbank Partners, LLC, but leaving the other motions to dismiss still pending.  (ECF No. 141.)  On February 7, 2022, Defendants filed a second motion for a protective order, this time in response to Plaintiffs stating that they intended to serve 242 subpoenas duces tecum on Defendants' "scholastic customers," i.e., high schools, colleges, and universities who had made agreements with Varsity.  (ECF No. 165 at PageID 1218.)  Plaintiffs responded with a motion to compel and for sanctions, arguing that the June 1 protective order expired when this Court entered the October 28 order on a single motion to dismiss, though three

motions to dismiss remained pending.  (ECF No. 167.)  Chief Magistrate Judge Pham[1] denied Plaintiffs' Motion on March 1, 2022, concluding that the June 1 protective order remained in effect given the still pending motions to dismiss, and Defendants were not required to respond to discovery requests in the non-cheerleading markets.  (ECF No. 177.)

Defendants served Plaintiffs with their first set of Requests for Production ("RFPs") on December 18, 2020.  (ECF No. 189 at PageID 2598.)  Plaintiffs responded on January 18, 2021, raising numerous objections but never indicating that they intended to withhold any potentially responsive documents.  (Id. at PageID 2599.)  Defendants did not respond to Plaintiffs objections until December 22, 2021.  (Id. at PageID 2601.)  In their delayed response, Defendants raised issues concerning whether produced PDFs complied with the ESI protocol.  (Id.)  Plaintiffs responded that they would "look into this" and, on January 5, 2022, Plaintiff Haygood produced 19 documents.  (Id.)  On January 28, Defendants reiterated their concerns regarding whether the new documents complied with the ESI protocol and also informed Plaintiffs of their concerns that Plaintiff Rockstar Championships, LLC ("Rockstar") had yet to produce a single document. (Id. at PageID 2601-02.)  Plaintiffs responded on February 3 by arguing that the ESI protocol was not a court order and never stipulated to but that "our professional duties of honesty and candor compel us to abide by the proposed Order as if it were an issued order or filed stipulation."  (Id. at PageID 2602.)  Plaintiffs also informed Defendants that they would cure the other complained-of defects and that additional documents would be forthcoming "shortly." (Id.)

Plaintiffs reproduced the same PDF documents on February 4, along with producing the first documents from Rockstar.  (Id. at PageID 2603.)  On February 10, Defendants reiterated the

---

[1] This case was transferred from Magistrate Judge Claxton to Chief Magistrate Judge Pham on November 3, 2021.  (ECF No. 144.)

same concerns involving sufficiency of production and ESI protocol compliance and, on February 18, 2022, Defendants filed their first motion to dismiss under Rules 37 and 41, or, in the alternative, motion to compel production, alleging that Plaintiffs had failed to produce responsive documents and failed to abide by the mutually agreed upon ESI protocol.  (ECF No. 171.)  In denying the motion to dismiss, Chief Magistrate Judge Pham recognized that Defendants had produced discovery six months late, but ultimately granted the motion to compel given Plaintiffs' apparent concession that they similarly had failed to produce all responsive documents and failed to strictly adhere to the ESI protocol.  (ECF No. 189 at PageID 2607-11.)  The Chief Magistrate Judge also warned Plaintiffs that "willful failure to cooperate in discovery could lead to dismissal of plaintiffs' case under Rules 37(b) and 41(b)."  (Id. at PageID 2611.)

On March 30, 2022, the Court granted in part and denied in part Defendants' remaining motions to dismiss.  (ECF No. 194.)  On April 18 (the close of fact discovery deadline for the cheerleading markets), Plaintiffs filed a motion to amend the scheduling order, requesting a 302-day extension of all discovery matters, mirroring the amount of time that elapsed as the Court considered Defendants' remaining motions to dismiss.  (ECF No. 214.)  The motion was denied as to the cheerleading markets as they had never been subject to the protective order.  (ECF No. 236.)  The Court did, however, grant an extension of the fact discovery deadline for the Band Uniform, Graduation Regalia, and Athletic Equipment markets until October 18.  (Id.)

Plaintiffs sent new RFPs to Defendants on August 24, to which Defendants objected on September 23.  On October 7, Plaintiffs notified Defendants that they intended to serve 238 subpoenas on schools and school districts who had entered into agreements with the Varsity Defendants.  (ECF No. 262 at PageID 3919.)  These subpoenas were nearly identical to those that had been barred previously by the June 2021 protective order, which expired on March 30,

4

2022, with the Court's resolution of the remaining motions to dismiss. On October 18, 2022, Defendants requested a second protective order to bar these renewed subpoenas because their return dates were after the close of the extended fact discovery for the non-cheerleading markets and because they were allegedly intended to harm Varsity's relationships with its customers. (Id. at PageID 3925-26.) Plaintiffs responded on November 1, arguing that they had attempted to serve the subpoenas back in February, and thus they should be considered timely. (ECF No. 273 at PageID 5164.) Plaintiffs also filed a motion to compel responses to the August RFPs. (ECF No. 272.) In the most recent discovery-related order in this case, Chief Magistrate Judge Pham granted the motion for a protective order as to the subpoenas and denied the motion to compel.

With this byzantine discovery history as a backdrop, Defendants argue several specific instances of discovery misconduct by Plaintiffs which, they contend, are sanctionable.

## II.    Pending Motion to Dismiss Under Rules 37 and 41 (ECF No. 239)

In their second motion to dismiss under Rules 37 and 41 (Chief Magistrate Judge Pham denied Defendants' first motion to dismiss under Rules 37 and 41, (see ECF No. 189)), Defendants allege specific discovery violations by each Plaintiff but begin with discovery infractions related to Plaintiff Haygood. (ECF No. 239 at PageID 3600-01.) Defendants allege that Plaintiffs provided additional discovery, specifically 161 documents which totaled over 450 pages, the day before Haygood's deposition on May 9, 2022, and several weeks after the April 18, 2022, fact discovery deadline for the cheerleading markets. (Id. at PageID 3600.) Defendants claim that this late disclosure prejudiced them by depriving them of sufficient time to review the documents before conducting Haygood's deposition. (Id.) Defendants further allege that Haygood disclosed during her deposition that she: (1) never kept a list of the search terms she used to identify responsive documents, (2) performed the searches on her own without

counsel, (3) failed to produce any documents related to her social media accounts, and (4) conceded that her responses were incomplete.  (Id. at PageID 3600-01.)

Defendants next point to failures by Plaintiff Jeff & Craig Cheer, LLC ("Jeff & Craig"). Defendants allege that, during the deposition of Jeff & Craig's owner Craig Hallmark on May 12, 2022, he admitted that the 18 pages of documents that Jeff & Craig produced prior to the close of fact discovery on April 18 did not cover all of Jeff & Craig's responsive documents.  (Id. at PageID 3601.)  Defendants point to additional alleged concessions from Hallmark, namely that he: (1) never searched for documents that Defendants allege would be responsive, (2) self-selected emails that he felt were responsive without input from counsel in violation of the ESI protocol, and (3) made no additional searches even after Chief Magistrate Judge Pham's March 23 Order granting Defendants' motion to compel.  (Id. at PageID 3601-02.)

Defendants next turn their attention to Plaintiff Rockstar.  Defendants note that, following the March 23 order granting Defendants' motion to compel, Rockstar produced 1,196 documents, many of which were graphical images.  (Id. at PageID 3602.)  Defendants aver that Rockstar failed to produce additional email communications before the April 18 discovery deadline, instead producing seven documents, four of which were newly produced emails, less than 24 hours prior to Rockstar CEO David Owens' deposition on May 17, 2022.  (Id.) Defendants describe further deficiencies allegedly conceded by Owens in his deposition, including that he: (1) did not maintain a list of search terms in violation of the ESI protocol, (2) failed to finish responding to Defendants' interrogatories, (3) did not produce personal text messages at all, and (4)  did not produce emails allegedly involving Rockstar's involvement with USASF, of which Rockstar had been a member.  (Id. at PageID 3603-04.)

Defendants next address alleged deficiencies by Plaintiff American Spirit and Cheer Essentials, Inc. ("American Spirit").  Defendants aver that American Spirit has only produced 129 documents and that, given American Spirit's failure to provide a list of search terms as required by the ESI protocol, Defendants suspect this production "is wrought with the same deficiencies of the productions of the other Plaintiffs."  (Id. at PageID 3604.)

Finally, Defendants list an additional six alleged violations of the Federal Rules and other discovery orders by Plaintiffs: (1) in January 2022, Plaintiffs' counsel sent an alleged ex parte communication to the Court on a substantive legal question; (2) in early 2022, Plaintiffs attempted to serve the nearly 250 subpoenas on Defendants BSN and Herff Jones' customers in violation of the protective order suspending discovery for those Defendants' markets; (3) in their motion to compel, Plaintiffs' failure to specify the requests they sought to compel required the Court to admonish Plaintiffs behavior as it demonstrated "at a minimum an extreme lack of care in presenting issues to the court," (ECF No. 177 at PageID 252); (4) Plaintiffs failed to consult with Defendants on multiple occasions in violation of Local Rule 7.2; (5) Plaintiffs failed to specify certain changes made to their allegations which the Court noted were "inappropriate[];" and (6) Plaintiffs included unauthorized additions to their filed Amended Complaint, including new allegations concerning Plaintiff Haygood and adding back claims already dismissed by the Court.  (ECF No. 239 at PageID 3605-06.)

Plaintiffs respond to Defendants' contentions of discovery violations largely on legal grounds. Critically, Plaintiffs do not seem to contest Defendants' factual allegations of discovery violations, and argue instead that the alleged discovery failures do not amount to "knowing and willful or reckless in the extreme [misconduct]" necessary to justify a dismissal of the case. (ECF No. 250 at PageID 3837-38 (cleaned up).)   Rather, they contend that the prejudice

suffered by Defendants is minimal at best.  (<u>Id.</u> at PageID 3839 ("Defendants' allegations of prejudice sums up to (1) having to edit an exhibit binder; (2) having to reschedule a deposition; and (3) making the instant motion (instead of coordinating with counsel for the American Spirit Plaintiffs")).)  Plaintiffs do, however, specifically respond to Defendants' six miscellaneous contentions, arguing that Defendants' counsel was in fact included on the allegedly <u>ex</u> <u>parte</u> communication with Court staff, that Plaintiffs operated in good faith regarding the termination of the protective order, that Defendants also failed to consult on some matters, that the Amended Complaint is in fact in compliance with the Court's Order granting leave to file it, and that, perplexingly, "humbly learning the bounds of propriety is a path of nobility" in reference to their failure to specify changes to their allegations.  (<u>Id.</u> at PageID 3837 n.1.)

Defendants contend in their Reply that Plaintiffs downplay their discovery violations by describing them as a "mere 21-day production delay" and "easily addressable" ESI violations, that Plaintiffs' contention that they had until October to correct discovery violations is incorrect, given the April 18 close of discovery for the cheerleading markets, and that Plaintiffs "make light of their failures to follow court orders and procedural rules."  (ECF No. 257 at PageID 3892.)

### III.    Supplemental Motion to Dismiss under Rules 37 and 41 (ECF No. 264)

On the day fact discovery closed in the three markets that had been subject to the protective order, October 18, Defendants filed a Supplemental Motion to Dismiss Under Rules 37 and 41.  (ECF No. 264.)  First, Defendants assert that Plaintiffs failed to correct any of the alleged discovery violations described in the previous Motion to Dismiss.  (<u>Id.</u> at PageID 4119.)  Defendants specifically note that Plaintiffs "have not produced additional documents related to the prior discovery requests, they have not identified what search terms were previously used as

the ESI Protocol requires, and they have not corrected the numerous technical deficiencies with their productions in terms of the provisioning of meta-data and other information required under the ESI Protocol." (Id. at PageID 4120.)  Defendants also note that the deposition of Heidi Weber, American Spirit's President, confirmed their suspicions regarding American Spirit's deficient discovery production.  According to Defendants, Weber conceded that American Spirit failed to produce responsive documents and she never produced a list of search terms nor had direction from counsel on her discovery obligations.  (Id. at PageID 4121.)  Defendants point out that, while Plaintiffs previously argued that they still had time to cure their deficiencies given the remaining October 18 deadline, that deadline has now elapsed and they have failed to take any action to correct their violations.  (Id. at PageID 4122.)

Defendants also allege that Plaintiffs have *continued* to fail to meet their discovery obligations.  (Id.)  Defendants first focus on alleged violations by Plaintiffs Mark and Kathleen Lukens, plaintiffs added in the Amended Complaint.  Defendants note that the Lukenses produced only 24 documents, three of which were produced after Dr. Mark Lukenses deposition on September 28, 2022, and aver that, given the Lukenses lengthy history with All Star Cheer, this production is likely seriously deficient.  (Id. at PageID 4123.)  Defendants also allege that Dr. Lukens conceded during his deposition that he had received little to no guidance from counsel on determining whether documents were "germane" to Defendants' requests, that he did not maintain a list of search terms in violation of the ESI protocol, that he failed to search for certain topics he personally felt were not relevant, and that additional documents were produced after his deposition had occurred.  (Id. at PageID 4125-26.)  Defendants additionally allege that similar concessions were made by Ms. Lukens during her deposition on October 18, including

her admission that she regularly deletes all of her text messages on a rolling basis, including those potentially relevant to Defendants' requests.  (Id. at PageID 4127.)

Defendants served new RFPs on new Plaintiffs Owens, Weber, and Hallmark on August 24, 2022.  (Id. at PageID 4128.)  Plaintiffs never responded to these RFPs and no documents were ever produced in response, despite an email from Plaintiffs that they would "comply with responses to the Requests to Produce that are dated August 24, 2022."  (Id.)  In Plaintiff Weber's second deposition, she testified that an outside company was working on the production and that she had taken no action on the RFPs.  (Id. at PageID 4129.)

Defendants finally argue that Plaintiffs also failed to complete their interrogatory responses, despite assurances from Plaintiffs' counsel that they would do so.  (Id. at PageID 4130-31.)

Plaintiffs' Response begins with a largely irrelevant 16-pages of "Background Story." While Plaintiffs are certainly the masters of their own briefings, this long section, focused on the merits of their claims, including screenshots from various Orders and Exhibits, does not, in any way, respond to Defendants' Motion.[2]

In addressing Defendants' Supplemental Motion, Plaintiffs first contend that they have in fact produced additional documents.  (ECF No. 274 at PageID 5429.)  Plaintiffs point to a screenshot of an email, dated October 13, 2022, from Plaintiffs' counsel to Defendants which included "four more documents we found for Karthy [sic] Lukens production."  (Id. at PageID 5430.)

---

[2] For example, Plaintiffs include a chart of U.S. and Tennessee Monthly Household Inflation Costs between 2021 and 2022.  (See ECF No. 274 at PageID 5418.)  Plaintiffs argue that Defendants' alleged monopolistic behavior exacerbates these rising costs.  (Id.)  While such an argument may be at home in an opening statement before a jury, the Court is left puzzled as to how this is relates to the discovery violations at issue here.

Plaintiffs then contend that they identified the search terms that were used to retrieve discovery documents.  (Id.)  They do not point to any centralized list of search terms prepared by counsel but instead point to an excerpt of Dr. Lukens' deposition where he mentions that he "used words like 'cheer.' [He] used words like 'Varsity.'"  (Id. at PageID 5431.)

Finally, Plaintiffs state that "[f]or more emails, 'meta data,' et. cetera, Tennessee professionals are working on it."  (Id.)  Plaintiffs argue that the individual Plaintiffs in this case "are everyday people . . . parents and small business. For technical 'meta data' et cetera beyond most people's everyday experience, IT professionals in Tennessee are working to provide that information."  (Id.)  In support, Plaintiffs point to a screenshot of an email from Alicia Burgett, an eDiscovery Senior Project Manager with RICOH USA to Mark Suter and Vicky Sims, stating that RICOH is "attempting to get with David Owens to collect his data."[3]  (Id. at PageID 5432.)

In their Reply, Defendants first note that Plaintiffs do not attempt to respond to their contentions concerning Weber's deposition testimony that American Spirit's discovery production was deficient, their contentions that Plaintiffs Weber, Owens, and Hallmark have not responded nor produced any documents in response to Defendants' RFPs, and their contention that Plaintiffs have not cured their allegedly deficient interrogatory responses.  (ECF No. 296 at PageID 6081.)  Defendants also argue that Plaintiffs' response that they have produced additional documents is deficient.  Defendants state that the additional production of four documents prior to Dr. Lukens' deposition does not respond to Defendants' contention that Dr. Lukens did not in fact maintain a list of search terms pursuant to the ESI protocol, that he had

---

[3] As Defendants point out in their Reply, this email is dated October 28, 2022, a full week and a half after the close of all fact discovery in this case.  Moreover, the text of the email intimates that the data collection for David Owens, only a single Plaintiff, *has yet to even begin*. Perhaps the most direct indication of Plaintiffs' scattershot approach to discovery in this case, the email is not even sent to the correct Plaintiffs' counsel.  The attorneys who received the email are those for the related Fusion Elite case.

little to no guidance from counsel in searching for documents, and that his production is wildly deficient given his long history in the cheerleading industry.  (Id. at PageID 6082.)

Finally, Defendants contend that Plaintiffs' argument concerning "IT professionals" does not comply with the ESI protocol.  (Id. at PageID 6083.)  Defendants aver that, not only was the ESI protocol negotiated and agreed to by the Parties, but the Court also previously ordered Plaintiffs to produce documents "in line with the ESI Protocol," and that email was a deficient response.  (Id. (quoting ECF No. 189 at PageID 2610).)

The Court brings particular attention to a footnote in Defendants' conclusion. Defendants state that, on November 4, 2022 (over two weeks after the close of all fact discovery), Plaintiffs provided approximately 59 gigabytes of documents.  (See id. at PageID 6084 n.3.)  Plaintiffs allegedly characterized this as a "document dump" because "they 'had no idea how time consuming and how long it takes to develop and screen this thoroughly.'"  (Id.) Moreover, Plaintiffs stated that, "'another document dump' is forthcoming." (Id.)  Defendants reiterate their claims of prejudice regarding these "document dumps," namely that they violate discovery deadlines and that they prejudice Defendants as they conducted depositions without the ability to review them beforehand.  (Id.)

## IV.    Hearing on the Motions to Dismiss (ECF No. 299)

On January 9, 2023, the Court held a hearing on the two pending Motions to Dismiss. (ECF No. 299.)  Defendants provided a detailed timeline of Plaintiffs' alleged discovery violations and argued that these violations demonstrate numerous breaches of representations made by Plaintiffs that they were in compliance with the Court's orders, that Defendants had to complete depositions under the pretenses of those representations, and that only a sanction of dismissal could remedy the violations.

Perhaps most significantly of all, at the hearing, Defendants informed the Court that Plaintiffs produced nearly 200,000 documents since the filing of the second pending Motion to Dismiss.  According to Defendants, on December 1, 2022, Plaintiffs Jeff & Craig and the Lukenses produced 57,021 and 5,415 documents respectively.  On December 8, 2022, Plaintiff American Spirit produced 90,015 documents and Plaintiff Rockstar produced 28,829 documents.  On January 7, 2023, the Lukens produced an additional 10,263 documents and Plaintiff Haygood produced 1,096 documents.  Defendants stated that, according to their estimates, Plaintiffs in this case produced more than 99% of all of their documents produced after the close of all fact discovery in this case on October 18, 2022.

Plaintiffs responded largely by conceding the weight of the factual allegations against them.  Plaintiffs did contest, however, Defendants' use of deposition excerpts claiming to show that the individual Plaintiffs did not receive assistance from counsel during the document production process, asserting that the excerpts were selectively and misleadingly quoted.  Plaintiffs also noted that they had provided a list of search terms to Defendants, as required by the ESI Protocol, on December 9, 2022, along with a response to a largely irrelevant privilege issue raised by Defendants.  Regarding the RICOH email concerning electronic document retrieval, Plaintiffs told the Court that they had begun interviewing companies in September 2023.  Finally, Plaintiffs conceded that interrogatories were still not finalized and signed by Plaintiffs at the time of the hearing.[4] [5]

---

[4] Plaintiffs filed a notice of supplemental interrogatory responses on February 16, 2023, nearly four months after the close of fact discovery.  (See ECF No. 303.)

[5] In yet another example of their disregard for the Court's deadlines, Plaintiffs filed a notice of serving their rebuttal expert report on March 15, 2023.  (ECF No. 304.)  The following day, Defendants filed a Motion to Strike the rebuttal report as untimely, as the deadline to serve rebuttal reports was March 13, 2023.  (ECF No. 305 at PageID 6167 (citing ECF No. 236).)

## **APPLICABLE RULES**

In light of the discovery violations described above, Defendants move to dismiss this case under Federal Rules of Civil Procedure 37 and 41 and assert that these violations constitute repeated violations of the Court's Scheduling Order, (ECF No. 100), and Chief Magistrate Judge Pham's March 23 Order, (ECF No. 189.)

Federal Rule of Civil Procedure 37(b)(2) provides that, where a party to the litigation fails to obey a court order to provide or permit discovery, the presiding court may impose sanctions on the non-compliant party.  Fed. R. Civ. P. 37(b)(2).  Appropriate sanctions include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination . . .

Fed. R. Civ. P. 37(b)(2)(A)(i-vi).  The Rule also provides that the Court "must [additionally] order" the payment of reasonable expenses, including attorney's fees, caused by the failure to comply, unless the noncompliance "was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

Additionally, Federal Rule 41(b) permits involuntary dismissal of a case "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order."  Fed. R. Civ. P. 41(b).

---

Because the Court is granting Defendants' Motions to Dismiss, the Motion to Strike is **DENIED AS MOOT**.

## ANALYSIS

There are four factors to consider when a party moves to dismiss a case under Federal Rules of Civil Procedure 37(b)(2) and 41(b): "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the [malfeasant] party's conduct; (3) whether the [malfeasant] party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action." Mulbah v. Detroit Bd. of Educ., 261 F.3d 586, 589 (6th Cir. 2001) (citations omitted); see also United States v. Reyes, 307 F.3d 451, 458 (6th Cir. 2002). None of the four factors are dispositive, but "a case may be dismissed by a district court where there is a clear record of delay or contumacious conduct on the part of the plaintiff." Mulbah, 261 F.3d at 591 (citations omitted). Because a plaintiff would be denied his or her day in court by a dismissal grounded in counsel's malfeasance, rather than his or her own, this test is applied "more stringently in cases where the conduct of a plaintiff's attorney is the reason for dismissal." Id. (citing Harmon v. CSX Transp., 110 F.3d 364, 367 (6th Cir. 1997)).

Each factor is addressed in turn below.

A. Willfulness, Bad Faith, or Fault

On the first factor, Plaintiffs' conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings." Id. (quoting Shepard Claims Serv. v. William Darrah & Assocs., 796 F.2d 190, 194 (6th Cir. 1986)). Even if a plaintiff does not act in bad faith, a plaintiff who "'nevertheless shows willfulness and fault in that he was at best extremely dilatory in not pursuing his claim,' indicates an intention to allow his case to lapse." Kovacic v. Tyco Valves & Controls, LP, 433 F. App'x 376, 380 (6th Cir. 2011) (quoting Schafer v. City of Defiance Police Dep't, 529 F.3d 731, 739 (6th Cir. 2008)).

The Court first agrees with Plaintiffs.  Though their list of alleged discovery deficiencies is extensive, Defendants have not shown "an intent to thwart judicial proceedings."  (ECF No. 250 at PageID 3840 (quoting Mulbah, 261 F.3d at 591).)  For example, Plaintiffs have not refused to appear for depositions or covered up harmful responsive documents.  The Court does find, however, that Defendants submitted evidence sufficient to show Plaintiffs' "reckless disregard for the effect of [their] conduct on these proceedings."

As Defendants argued during the hearing and Plaintiffs did not dispute, between January 6, 2022, and February 18, 2022, the Parties conferred regarding document production.  Plaintiffs assured Defendants that they would correct some limited discovery issues prior to the April 18 deadline but failed to do so.  On April 18, Plaintiffs informed Defendants that, "to the best of our knowledge, we are now in full compliance with the Court's orders."  (ECF No. 250-1 at PageID 3842.)  On June 22, Plaintiffs provided this same email to the Court in their Response to Defendants' first pending motion to dismiss, asserting that "the American Spirit Plaintiffs continue to provide full discovery and address any deficiencies, real or perceived."  (ECF No. 250 at PageID 3838.)  Defendants then deposed Plaintiffs, relying on Plaintiffs' assurance of full compliance.

Whether or not they were actually aware of the existence of additional responsive documents, Plaintiffs' assurances were made with reckless disregard for their effect on these proceedings.  In direct conflict with their statements at the hearing on these pending motions in January 2023, where Plaintiffs told the Court that they began interviewing companies for document production in September 2022, Plaintiffs had already retained RICOH as far back as February 2022 as they assured Chief Magistrate Judge Pham that "Plaintiffs have and are continuing to put forward efforts to produce discovery as evidenced by the recent RICOH

production of over 300 documents."  (ECF No. 189 at PageID 2609 (quoting ECF No. 178 at PageID 2456 n.1).)[6]  Plaintiffs therefore should have been on notice that additional documents may have been forthcoming, given the roughly 200,000 documents produced by RICOH in December 2022 and January 2023; indeed, as RICOH had already been retained by that point, there was little reason that the list of search terms turned over to Defendants on December 9, 2022, could not have been used to perform searches as far back as March 2022, before the close of fact discovery in any market.  Instead, Plaintiffs made these assurances of full compliance to Defendants and the Court despite the lack of any serious effort to actually comply until after the close of discovery.  These assurances were false and reckless in nature.

Moreover, Plaintiffs' production of nearly 200,00 documents months after the close of fact discovery only serves to strengthen the argument that Plaintiffs' have conducted themselves with reckless disregard to the effect of their conduct on these proceedings.  This late production, the tardiness of which Plaintiffs have never provided a sufficient, if any, explanation for, shows that Plaintiffs were capable of cooperating and producing both the responsive documents and search terms that Defendants were entitled to receive under the Federal Rules and agreed-upon ESI protocol.  Instead, Plaintiffs simply failed to do so until after the deadline had long since passed.  And they failed to comply despite already having retained a document production company.  Indeed, nearly one year passed between Plaintiffs' initial hiring of RICOH on February 25, 2022, and Plaintiffs' "document dumps" in January 2023; it took a similar length of time for Plaintiffs' to relay a list of search terms pursuant to the ESI protocol.  And not only were

---

[6] In their Response in Opposition to Defendants' first Motion to Dismiss and Motion to Compel, Plaintiffs stated that "the American Spirit Plaintiffs continue to produce documents and data on a rolling basis–just as many of the corporate defendants have–up to and including Plaintiff's recent production of over 300 documents recently produced through a document retention company hired by Plaintiffs called RICOH on February 25, 2022."  (ECF No. 178 at PageID 2456 n.1.)

documents produced late, Plaintiffs failed to file responsive interrogatories until nearly four months after the close of discovery, (see ECF No. 303), and served their rebuttal expert report after the deadline to do so, (see ECF No. 304).

The crucial fact is that, during this year in which Plaintiffs failed to comply with the Court's discovery orders, all discovery closed. Depositions were taken on the basis of representations made by Plaintiffs that they were in full compliance. But Plaintiffs failed to timely comply despite their now-apparent ability to do so. This substantial and repeated disregard for the Court's deadlines constitutes a reckless disregard by the Plaintiffs of the effect of their conduct on these proceedings.

This factor weighs in favor of dismissal.

B. Prejudice

A compliant party "is prejudiced when it is 'unable to secure the information requested' and 'required to waste time, money, and effort in pursuit of cooperation which [the opposing party] was legally obligated to provide." Barron v. Univ. of Mich., 613 F. App'x 480, 485 (6th Cir. 2015) (quoting Harmon, 110 F.3d at 368) (alteration in original). Defendants readily meet this factor.

As Defendants argued at the hearing on these motions, they have expended significant time, money, and effort to attempt to obtain what Plaintiffs do not contest are responsive documents. Beyond the extensive communications between the Parties that would have been unnecessary except for Plaintiffs' failure to produce documents, Defendants conducted depositions of the named plaintiffs in this case without the benefit of the hundreds of thousands of documents produced after the close of all fact discovery on October 18, 2022. These depositions are now likely largely unusable, as Defendants were not permitted to inquire into

potentially important topics sourced from these new documents.  This alone constitutes a

significant waste of time, money, and effort by Defendants, as new depositions in light of the

new documents would be necessary. This factor also weighs in favor of dismissal.

C.  <u>Notice of Potential Dismissal</u>

Before imposing a sanction of dismissal, a district court should consider whether the

noncompliant party was put "on notice that further noncompliance would result in dismissal."

<u>Bradley J. Delp Revocable Trust</u>, 665 F. App'x at 523 (internal quotation marks omitted).  This

factor is a "key consideration."  <u>Id.</u> (quoting <u>Schafer v. City of Defiance Police Dep't</u>, 529 F.3d

731, 737 (6th Cir. 2008)).  Here, unfortunately, this factor is easily met.

Chief Magistrate Judge Pham, in the March 23 Order, explicitly warned Plaintiffs that the

Order "constitutes a warning that willful failure to cooperate in discovery could lead to dismissal

of plaintiffs' case under Rules 37(b) and 41(b)."  (ECF No. 189 at PageID 2611.)  Such a

warning constitutes explicit and direct notice that continued failures to produce documents could

result in a dismissal as a sanction.

There may be some "wiggle-room" to be found in the Chief Magistrate Judge's use of the

word "willful."  Indeed, Plaintiffs argue that Defendants' litany of alleged discovery violations,

most of which they do not explicitly contest, were not the result of willful actions on their part.

Given this, so the logic goes, Plaintiffs were never warned that future *reckless but unintentional*

discovery violations would lead to dismissal, only that violations that evince willful infractions

could lead to such a harsh sanction.  This argument, however, is unavailing.

The March 23 Order involved precisely the same type of violations that Plaintiffs have

engaged in throughout this case.  Defendants complained of Plaintiffs' frequent inability to

comply with the ESI Protocol and the paltry number of documents produced by the individual

Plaintiffs.  (ECF No. 189 at PageID 2607-08.)  These are precisely the same category of discovery violations at issue in the two pending motions; indeed, Defendants reallege the very same violations in the two pending motions along with additional violations that have occurred since March 23, 2022.  Moreover, as is the case here, Plaintiffs largely did not contest the alleged violations detailed in the March 23 Order, responding instead that they had retained RICOH to assist in their production, a defense they reassert in response to these motions.  (Id. at PageID 2609.)  In declining to impose a sanction of dismissal against Plaintiffs for this behavior last March, the Chief Magistrate Judge found that "the fact that Plaintiffs have not been previously warned by the court that their failure to cooperate could lead to dismissal cuts against ordering such a harsh sanction."  (Id. at PageID 2610 (citation omitted).)  The Chief Magistrate Judge thus provided Plaintiffs a warning that such continued behavior could result in dismissal.

The posture of this issue is different now, given the warning in the March 23 Order that referred to behavior identical to that described here.  The Chief Magistrate Judge's March 23 warning about the same discovery violations supports the conclusion that Plaintiffs had sufficient warning that continued discovery violations of this kind could result in dismissal of their case.  This factor weighs in favor of dismissal.

### D.  Lesser Sanctions

The final factor to be considered is whether other, lesser sanctions short of dismissal "would protect th[e] integrity of the judicial process."  Bradley J. Delp Revocable Trust, 665 F. App'x at 524.  The Court is not barred, however, from imposing dismissal as the "first and only sanction" and is not required to "incant a litany of possible lesser sanctions."  Id. (quoting Schafer, 529 F.3d at 738) (internal quotation marks omitted).

This Court has not imposed lesser sanctions in this case up to this point.  Defendants asserted at the hearing on these motions that Magistrate Judge Pham's March 23 Order granting their motion to compel constituted a lesser sanction.  The Order, however, merely required Plaintiffs to produce all responsive documents in the non-cheerleading markets by April 18, 2022, which was already the deadline to do so.  Merely requiring full compliance with a preset deadline is not itself a sanction.

The Court, however, agrees with Defendants that lesser sanctions are insufficient to protect the integrity of the judicial process.[7]  Throughout this case, Plaintiffs have repeatedly represented both to the Court and to Defendants that they were in full compliance with the Court's orders governing discovery.  Their production of nearly 200,000 documents in December 2022 and January 2023, roughly two months after the close of all fact discovery, has proven those repeated assurances false.  Plaintiffs' behavior evinces a nonchalant attitude to the Court's deadlines which seem to have been viewed by Plaintiffs as more like guidelines.  These deadlines serve an important purpose: protecting the rights of all parties to a fair legal process.  Plaintiffs' failures to comply with the Court's Orders have imposed significant prejudice on Defendants by requiring substantially more time, effort, and money to obtain documents they were entitled to receive.  Were Plaintiffs' behavior not sufficiently sanctioned, litigants in other cases may also come to view the Court's deadlines more like guidelines, resulting in increased

---

[7] At the hearing on these motions, Plaintiffs suggested that the Court permit Defendants to re-depose Plaintiffs for the limited purpose of questioning involving the newly produced documents.  Defendants responded that, regardless of whether they could re-depose Plaintiffs, they would not be able to use the new documents to re-depose third-party deponents.  The Court agrees with Defendants that ordering additional depositions, some almost a full year after the April 18, 2022, close of discovery as to certain markets, is insufficient to remedy Plaintiffs' substantial discovery violations.

prejudice being suffered by compliant parties and raised litigation costs.  This is not a desirable outcome and, in the Court's view, requires a dismissal of this case to avoid.

Though no lesser sanctions have been imposed, given the serious, substantial, and repeated failures to comply with the Court's Orders governing discovery, the Court finds that the severe sanction of dismissal is warranted.

<p style="text-align:center">* * * *</p>

With all four factors weighing in favor of dismissal, the Court finds Defendants' requested sanction of dismissal is appropriate.

<p style="text-align:center"><u>**CONCLUSION**</u></p>

For the reasons detailed above, Defendants' Motions to Dismiss are **GRANTED**. Plaintiffs' claims in this case are therefore **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED,** this 21st day of March, 2023.

<div style="margin-left:40%">
s/ Sheryl H. Lipman_____

SHERYL H. LIPMAN

CHIEF UNITED STATES DISTRICT JUDGE
</div>